IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **(UNDER SEAL)** |
| v. | Case No. 1:19-MJ-120 |
| DARYL ANTONIO PEARCE, | Hon. Theresa C. Buchanan |
| Defendant. | **UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF A**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, John C. Donovan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I have been a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") since November 2016.  I am assigned to ATF Washington Field Division's

Firearms Trafficking Group.  My assignments include investigating individuals who are involved

in the illegal purchase, possession, and transfer of firearms, and violent crimes involving firearms.

While conducting and participating in these investigations, I have prepared and executed search

warrants resulting in the seizure of phone and internet records and participated in the search and

seizure of electronic devices, including cellular phones and "smart" phones, and e-mail accounts.

I have also conducted mobile and static surveillance, interviewed and debriefed witnesses, and

participated in arrests.  Since working for the ATF, I have graduated from the Criminal Investigator

Training Program and ATF Special Agent Basic Training.  Prior to joining the ATF, from 2002

until 2012, I was an officer in the U.S. Navy on active duty.  Since 2012, I have served in the Navy

Reserve.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant charging

Daryl Antonio PEARCE ("PEARCE") with violations of Title 18, United States Code, Sections 924(n) and 2 (traveling from any state to another to acquire or attempt to acquire a firearm with the intent to engage in conduct in violation of section 922(a)(1)(A)), among other crimes.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information and evidence obtained from other agents, law enforcement officials and witnesses. All observations I did not personally make were related to me by the individuals who made them, or come from my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4.     Since approximately November 2017, law enforcement has been investigating certain firearm purchases involving Darius Antonio Giles ("Giles") in the Eastern District of Virginia and elsewhere. In January 2018, PEARCE became a part of this investigation. As part of this investigation, the ATF has interviewed multiple private citizens who have sold firearms to an individual who represented himself as being Malik Omarsha Yarborough ("Yarborough"). ATF's investigation determined that the individual purporting to be Yarborough during these transactions was, in fact, Giles.

5.     Throughout the course of the criminal conduct set forth in this affidavit, Giles has held a valid Maryland driver's license and has resided in Temple Hills, Maryland and Washington, D.C.

6.     Throughout the course of the criminal conduct set forth in this affidavit, PEARCE has held a valid Maryland driver's license and has resided in Maryland and Washington, D.C.

2

PEARCE's Maryland identification card was issued, on or about October 16, 2015, and lists his address as being in Lexington Park, Maryland.  The Lexington Park, Maryland address is PEARCE's mother's residence. On or about April 28, 2016, the Maryland DMV issued PEARCE a learner's permit.  Prior to obtaining his Maryland identification card, PEARCE possessed a Washington, D.C. identification card, which listed his address as being in Southeast Washington, D.C., which was PEARCE's father's residence.  According to Virginia's DMV records, PEARCE has never held a valid Virginia driver's license or identification card.

7.      Based on Maryland and District of Columbia DMV records and birth certificates, ATF determined that Giles and PEARCE are half-brothers who have the same father.  PEARCE's and Giles's father currently resides in Temple Hills, Maryland at the address listed on Giles's Maryland driver's license.

*Witness 1's Gun Sales to Giles*

8.      On or about July 27, 2017, a Springfield XD Mod.2, .45 caliber semi-automatic pistol, bearing Serial Number ("S/N") GM437628 (hereinafter "GUN A") was recovered in Washington, D.C., by the Metropolitan Police Department (hereinafter "MPD") during the arrest of a fugitive who was not the original purchaser of GUN A.

9.      ATF determined that GUN A was purchased by Witness-1 ("W-1") from a pawn shop, located in Arlington, Virginia, within the Eastern District of Virginia, ten days before it was recovered by MPD.

10.     Your affiant interviewed W-1 and determined that he sold a firearm on three separate occasions to an individual who represented himself to W-1 as Malik Yarborough.  W-1 stated that W-1 communicated with Yarborough via the e-mail address, yarborough1990@gmail.com, and that Yarborough used the phone number 202-812-0086

3

(hereinafter the "202 NUMBER"), for each of the aforementioned firearms purchases. ATF investigation determined that, in fact, it was Giles that represented himself as Yarborough to W-1. On at least two occasions Giles presented W-1 with a Virginia Commercial Driver's License (CDL) with Yarborough's name and photograph on it (hereinafter "Yarborough ID-1") for the purchases. Giles purchased a firearm from W-1 on or about July 19, 2017, on or about August 15, 2017, and on or about October 15, 2017.

11.     Malik Yarborough is a convicted felon and, when interviewed by ATF agents, Yarborough further explained that at no point did he provide Giles or anyone else with his identification.     Yarborough also explained that his e-mail address is not yarborough1990@gmail.com.

12.     Giles purchased GUN A, on or about July 19, 2017, in the parking lot of W-1's apartment complex, located in Arlington, Virginia, within the Eastern District of Virginia. Giles purchased a Springfield XDS-9, 9mm semi-automatic pistol, bearing S/N S4917212 (hereinafter "GUN B"), in the parking lot of W-1's apartment complex, on August 15, 2017. Giles purchased a Taurus, PT 111, 9mm semi-automatic pistol, bearing S/N TKU27089 (hereinafter "GUN C"), in the vicinity of the Macy's at Ballston Mall, located in Arlington, Virginia, within the Eastern District of Virginia, on October 15, 2017. Giles arrived for all three purchases in a silver/light gray, 2-door, 4 seat Infiniti with a District of Columbia license plate. Based on ATF's investigation, the described vehicle is a 2004 gray Infiniti G35 bearing D.C. license plate EZ3836, registered at the time to Giles's mother.

### Firearm Recovery from Giles's Vehicle

13.     On or about September 21, 2017, Giles and PEARCE exchanged text messages about arranging to purchase a Century Arms, 7.62 Micro Draco, semi-automatic pistol that was

listed for sale on Armslist by a seller in Petersburg, Virginia. In these messages, PEARCE and Giles discussed PEARCE driving Giles down to Virginia to purchase the firearm and the address they would be driving to in order to purchase the firearm from the seller.

14.     On October 4, 2017, MPD officers responded to the 7000 Block of Yuma Street SE, Washington, D.C., to investigate the sounds of gunfire. While approaching a different vehicle in the vicinity, MPD Officers observed in plain sight a Century Arms, 7.62 Micro Draco, semi-automatic pistol, bearing S/N PMD-01488-14, inside an unoccupied 2004 gray Infiniti G35 that was parked on Yuma Street. MPD recovered the firearm from the vehicle along with Yarborough ID-1 and Giles's Washington, D.C. driver's license.

15.     After the October 4, 2017, search of the 2004 gray Infiniti G35, Giles purchased a 2012 Black Audi A8L from AM-KO Auto Inc., in District Heights, Maryland, on or about November 6, 2017. At the time of the purchase, Giles listed his address as being in Southeast Washington, D.C. and listed his cell phone number as the 202 NUMBER on the purchase paperwork. As part of the vehicle purchase, Giles also traded-in the 2004 gray Infiniti G35 that had been driven to meet with W-1.

### September 5, December 5, and December 10, 2017 Firearms Purchases

16.     On or about February 15, 2018, your affiant interviewed Witness 2 (hereinafter "W-2") about the sale of a firearm to Giles. W-2 was contacted by an individual using the yarborough1990@gmail.com e-mail address and met Giles to sell the firearm, on or about September 5, 2017, in Mechanicsville, Virginia, within the Eastern District of Virginia.

17.     The original Bill of Sale ("BOS") for this purchase, dated September 5, 2017, showed the sale of three firearms to a purchaser who purported to be Malik Yarborough to W-2. Specifically, a CZ PO7, .40 caliber, semi-automatic pistol, bearing S/N B462698 (hereinafter

"GUN D"), a Glock 22, .40 caliber, semi-automatic pistol, bearing S/N HYN927 (hereinafter "GUN E"), and a Springfield XD, .45 caliber, semi-automatic pistol, bearing S/N XD734157 (hereinafter "GUN F").

18.     Your affiant recovered this BOS and sent it to the ATF laboratory for fingerprint analysis, which showed a positive match for Giles's fingerprints. On the BOS for GUN D, GUN E, and GUN F, Malik Yarborough's name is spelled differently and incorrectly than its actual spelling in two different places on the BOS.

19.     On January 15, 2019, your affiant interviewed W-2, who provided three additional original BOS for purchases with Giles, one dated December 5, 2017, for the purchase of two firearms, and two more BOS dated December 10, 2017, for the purchase of five firearms. W-2 met Giles for the purchases on December 5 and 10, 2017, in the vicinity of Mechanicsville, Virginia. One of the firearms that was purchased by Giles from W-2, on December 10, 2017, was later recovered by MPD in Washington, D.C., on April 26, 2018, from an individual other than Giles.

*December 28, 2017, Attempted Purchase*

20.     On March 16, 2018, your affiant met with W-3 regarding the attempted purchase of a Fabrique Nationale d'Armes, Five-Seven, 5.7 x 28 mm caliber, semi-automatic pistol, bearing S/N 386274091 (hereinafter "GUN G"), that W-3 advertised for sale on Armslist.

21.     W-3 provided correspondence with an individual purporting to be Malik Yarborough using the e-mail address yarborough1990@gmail.com and the phone number (703) 646-8325 (hereinafter "703 NUMBER"). W-3 conducted a Google search of Yarborough's name and found that Yarborough had a criminal record that contained a felony. W-3 texted the 703

NUMBER stating that W-3 did not feel comfortable selling the firearm to him and then W-3 ceased communication with the individual identifying himself as Yarborough.

22. Approximately seven minutes later, W-3 was contacted by an individual using the e-mail address gilesdarius203@gmail.com. When asked by W-3 "What's your name?" the individual identified himself as "Darius." W-3 then asked "and you[r] middle and last name?" and the individual responded "Antonio Giles." W-3 then communicated with Giles via text messages with Giles using the 202 NUMBER. W-3 arranged to meet Giles, on December 28, 2017, at a Home Depot, located in Fairfax, Virginia, within the Eastern District of Virginia. An individual whom W-3 believed to be Giles pulled alongside W-3's vehicle from behind, in a black, newer model Audi with tinted windows. The description of this vehicle matches the description of the vehicle Giles purchased on or about November 6, 2017. The driver, Giles, exited the vehicle and approached W-3, introduced himself as "Malik," and handed his identification card to W-3. W-3 questioned Giles as to why he called himself "Malik". W-3 stopped the transaction shortly afterwards, and left the Home Depot, still in possession of the firearm.

### *December 30, 2017, Firearms Purchase*

23. On March 15, 2018, your affiant interviewed Witness 4 ("W-4") and Witness ("W-5") about the sale of a firearm to an individual who presented himself as Malik Yarborough.

24. W-4 told agents that, on or about December 30, 2017, he asked W-5 to post three firearms for sale on Armslist. Specifically, W-5 posted for sale a Glock 17, 9mm, semi-automatic pistol, bearing S/N AXB766US (hereinafter "GUN H"), a Glock 22, .40 caliber, semi-automatic pistol, bearing S/N MBP613 (hereinafter "GUN I"), and a Glock 27, .40 caliber, semi-automatic pistol, bearing S/N NKS310 (hereinafter "GUN J"). That same day, W-5 was contacted on Armslist by a buyer using the yarborough1990@gmail.com e-mail address. The individual, who

represented himself as Yarborough, texted W-5 from the 703 NUMBER. Soon thereafter, W-4 began communicating with the individual W-4 believed was Yarborough via the 703 NUMBER. Via several text messages, Giles also agreed to purchase a Glock 21, .45 caliber, semi-automatic pistol, bearing S/N AWF455US (hereinafter "GUN K") from W-4 and to meet at a BP gas station, in Charlottesville, Virginia, later that evening.

26.     Giles arrived at the BP gas station in a black Audi with tinted windows. Giles presented himself as Yarborough and introduced himself as "Malik".   W-4 then took approximately $1700 from Giles in exchange for the four firearms. W-5 stated W-5 looked at the driver's license presented by Giles, which law enforcement understands was a fraudulent Virginia identification listing Yarborough's name.

26.     Later that evening, on or about December 30, 2017, Giles was arrested in Spotsylvania, Virginia, within the Eastern District of Virginia, following a high-speed vehicle pursuit by the Orange and Spotsylvania Counties' Sheriffs' Offices. At the time of his arrest, Giles was driving a 2012 Black Audi A8L.

27.     During the pursuit, Sheriffs' Deputies and Officers witnessed several objects being thrown out of the passenger side window that appeared to be firearms and a box. The day after the vehicle pursuit, law enforcement recovered GUN H on the roadside along the route of pursuit. On or about February 12, 2018, a private citizen found GUN J on the roadside along the vehicle pursuit route. GUN J was later recovered by law enforcement. On or about August 12, 2018, GUN K was found by a private citizen on the roadside along the vehicle pursuit route. GUN K was later recovered by law enforcement.

28.     In the vehicle with Giles at the time of the pursuit were PEARCE, Mahje Damien Powers (a convicted felon), and A.P. (a juvenile).

29.     Following the pursuit, Giles's black Apple iPhone was recovered from his vehicle. Also recovered from Giles's vehicle was PEARCE's white Apple iPhone.

### Jail Phone Calls between PEARCE and Giles

30.     From on or about December 30, 2017, until on or about July 13, 2018, Giles was detained by the Commonwealth of Virginia at the Central Virginia Regional Jail ("CVRJ") pending the resolution of charges relating to the aforementioned high-speed pursuit. While held at CVRJ, Giles made several phone calls to PEARCE, wherein they discussed their previous firearms purchases and sales of firearms, along with future plans to continue purchasing and selling firearms after Giles was released from CVRJ.

31.     Based on your affiant's review of jail calls between Giles and PEARCE while Giles was incarcerated at the CVRJ, your affiant believes that PEARCE was present during a number of the aforementioned fraudulent gun purchases and aided and abetted Giles in making these purchases. For example, on or about May 25, 2018, Giles made a phone call to PEARCE from the CVRJ. During the call, PEARCE told Giles that he was looking that morning and there was an AR available for $700, which your affiant believes is a reference to an advertisement for the sale of an assault-rifle style firearm. PEARCE and Giles proceeded to discuss the fair price of various firearm models, as well as prior firearms purchases they had both been involved. Specifically, Giles referenced an attempted firearm purchase made a few days before the high-speed vehicle pursuit. For a few seconds, PEARCE forgot whether he went on that trip. Giles reminded PEARCE that Giles had messed up his name (which your affiant believes is a reference to the name on the Yarborough ID), and that caused PEARCE to remember that he had gone on the trip. PEARCE further stated, "You know how many times we [inaudible] year ... it was every day ... I don't remember half the fucking shit we done got." Based on the facts and timing relayed by

Giles during this call, your affiant believes it is likely Giles was referencing the failed transaction with W-3 on December 28, 2017.

32.     Later during this same conversation, PEARCE asked about someone who they had met and purchased XDs from, possibly in Arlington, Virginia, and from whom they had purchased firearms from on several occasions.   Your affiant believes PEARCE's reference to "XDs" describes a Springfield XD model semi-automatic pistol, and that the individual they were discussing was likely W-1, whom GILES purchased two Springfield XD semi-automatic pistols from, on or about July 19 and August 15, 2017.  PEARCE further stated that this individual posted something new.  Giles said he had that individual's phone number on his phone.  PEARCE said he was not sure about attempting to purchase, because he did not really look like that, which your affiant believes is a reference to the photograph on the Yarborough ID.  Giles responded that PEARCE should wait until Giles got home, and that he had things lined up.  Giles said when he gets released, all he needs is a "cool stack," which your affiant knows to be slang for $1000, to get on his feet and that he already had that.

33.     Prior to that, on or about May 17, 2018, PEARCE told Giles during a phone call that he was looking at some firearms the previous night.  Giles asked PEARCE if he still had the e-mail, apparently referencing the yarborough1990@gmail.com address.  PEARCE responded that he did have the e-mail and then asked Giles, "what's up with the ID, though?  Like how we gonna get around that?"  Giles responded that he still had a picture of the ID.  Search warrant returns from the yarborough1990@gmail.com e-mail address revealed that, on or about October 11, 2017, Giles emailed himself a picture of the Yarborough ID to his work DC.gov email.

34.     A CVRJ representative explained to your affiant that Giles was not authorized to access his e-mail account and would not have had the means to do so while detained at the facility,

10

between on or about December 30, 2017, until on or about July 13, 2018.  However, access logs provided by Google revealed that the account was accessed on at least two occasions, on or about February 9, 2018, and on or about March 28, 2018.

### PEARCE Cell Phone Analysis

35.     Based on open-source research, ATF observed a picture on Instagram, posted on or about January 2, 2018, of PEARCE with four Glock handguns on his lap while sitting in the rear passenger seat of an Audi vehicle.  During your affiant's review of PEARCE's cellphone, this picture, and many other pictures that were very similar in nature, was also found as an image file in PEARCE's cell phone.  The firearms in the picture match the description of the four Glock firearms purchased on or about December 30, 2017, from W-5.  As described above, during the high-speed pursuit, Sheriffs' Deputies and Officers witnessed several objects being thrown out of the passenger side window of Giles' Audi that appeared to be firearms and a box.  Several of these firearms were later recovered.

36.     Also found on PEARCE's cell phone were text messages between PEARCE and another unnamed co-conspirator, on or about December 29, 2017,  in which they discuss the location of a .380 caliber firearm they are attempting to sell.  Concurrently, PEARCE and Giles were texting about the location of that firearm.  After finding the firearm, PEARCE and the unnamed co-conspirator discussed selling the firearm to a potential buyer.  The unnamed co-conspirator then stated to PEARCE that he also had a "9" available to sell to the potential buyer for $600 and that PEARCE could add his own "tax" on the sale to the potential buyer.  PEARCE then responded to the unnamed co-conspirator that the potential buyer wanted to buy the "9," not the .380 firearm and that he offered to sell the firearm to the potential buyer for $700 – a price that would have included a $100 "tax" for PEARCE.

11

*Giles Cell Phone Analysis*

37.     Preliminary analysis of Giles' cell phone revealed that it was associated with an AT&T account that used the 202 NUMBER. Multiple text messages were found in which Giles used the 202 NUMBER and a Text Free Ultra account associated with the 703 NUMBER to communicate with various individuals about the purchase of firearms.

38.     The phone contains numerous text messages between Giles and PEARCE wherein they discuss purchasing and selling firearms together. In many of the text message exchanges PEARCE and Giles text pictures of firearms listed on Armslist, meet locations with sellers, raising the funds for the costs of firearms they purchased in Virginia, and the price they planned to sell the firearms for in Maryland and Washington, D.C.

39.     For example, on or about September 27, 2017, PEARCE contacted Giles about the purchase of several firearms, and PEARCE and Giles discussed the prices for those firearms, and the distance they would have to travel in order to purchase the firearms.

40.     Then, on or about October 12, 2017, PEARCE and Giles discuss a firearm and the price that Giles was willing to sell the firearm for. During the conversation, PEARCE stated that he had two individuals who wanted to buy the discussed firearm from PEARCE that day.

41.     Then, on or about November 15, 2017, PEARCE and Giles discussed the price to purchase a Draco firearm and driving down together to Ashland, Virginia, within the Eastern District of Virginia, to meet the seller. PEARCE and Giles also discussed splitting the cost of the firearm with other co-conspirators.

42.     Then, on or about November 22, 2017, PEARCE texted Giles to ask him what firearms he currently had for sale. When Giles responded that he did not currently have any firearms for sale, PEARCE asked Giles to inform when he did have firearms available to sell.

43.    Then, on or about December 14, 2017, PEARCE and Giles discussed their fears that a co-conspirator, who had been arrested on separate charges, would provide evidence against them or would have his cell phone searched, thereby implicating each of them in a crime.  At one point, PEARCE shared text messages with Giles in which PEARCE had previously directed this co-conspirator to go to Giles's Temple Hills residence and this co-conspirator had told PEARCE to meet him outside.  PEARCE and Giles also discussed moving the firearms they had stored at Giles's Temple Hills residence to another location in case the co-conspirator identified Giles or PEARCE to law enforcement.

44.    Then, on or about December 21, 2017, PEARCE texted Giles to ask him what the prices were for each of the firearms he currently had for sale.  When Giles responded with the prices for four firearms for sale, he also told PEARCE that he could add some money onto the prices to cover PEARCE's end.  PEARCE stated that he did not have a buyer yet for the firearms but that he "added 50 on the end" of the prices he was advertising to potential buyers.

45.    Then, on or about December 28, 2017, PEARCE texted Giles to ask him what firearms he currently had for sale.  When Giles responded with what firearms he had for sale, PEARCE asked what the package price for the firearms was.  Giles explained he had not yet purchased the listed firearms and PEARCE said he would hold off on advertising the sale of the firearms until Giles bought them.  Giles responded, "you better get some fucking money so you can get on this."

13

**CONCLUSION**

46.     Based upon the foregoing, I submit there is probable cause to believe that, between July 2017 and December 2017, within the Eastern District of Virginia and elsewhere, the defendant, Daryl Antonio Pearce, did act with the intent to engage in the business of dealing firearms, in violation of Title 18, United States Code, Sections 924(n) and 2, among other crimes.


Respectfully submitted,


Special Agent John C. Donovan
Bureau of Alcohol, Tobacco, Firearms, and Explosives


Sworn and subscribed to before me the 8th day of March, 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa C. Buchanan
United States Magistrate Judge